**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. Nos. 12-200 & 12-309 |
| | ) | Civil Action Nos. 14-1274 & 14-1275 |
| RICCO SEARS, | ) | Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

This matter is before the Court on a Renewed Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("Motion") filed by *pro se* Defendant Ricco Sears ("Defendant" or "Sears"), (Docket No. 62)[1], which is opposed by the Government, (Docket No. 64). On February 19, 2014, this Court accepted the parties' Rule 11(c)(1)(C) plea agreement and sentenced Defendant to concurrent terms of incarceration of 60 months at each of Count 4 of Criminal Number 12-200 and Count 1 of Criminal Number 12-309, and also ordered that the sentences run consecutively to the sentences of 18 months' incarceration, which were imposed by Chief Judge Joy Flowers Conti, ("SRV Court"), on February 11, 2014 for supervised release violations at Criminal Numbers 08-229 and 08-297. (Docket No. 44).

Through his § 2255 Motion, Defendant challenges the portion of this Court's Judgments designating that the sentences run consecutively rather than concurrently to the supervised release sentences imposed by the SRV Court. (Docket Nos. 62, 63, 65). Defendant relies upon the SRV Court's Memorandum Opinion denying, without prejudice, his separately filed § 2255 Motion

1 The Court notes that the relevant pleadings and other submissions are dual-filed at Crim. Nos. 12-200 and 12-309. For convenience, the Court cites only to the documents filed at Crim. No. 12-309. The Court also refers to Defendant's submission singularly as "Motion" although it is filed at both case numbers.

challenging the sentences received for the supervised release violations in Criminal Numbers 08-229 and 08-297. *See Sears v. United States*, Crim. Nos. 08-229, 08-297, 2016 WL 757763 (W.D. Pa. Feb. 26, 2016).[2] In that decision, the SRV Court noted that lack of binding authority from the United States Court of Appeals for the Third Circuit but accepted persuasive authority from other Courts of Appeal holding that 18 U.S.C. § 3584(a) should be interpreted as meaning that a Federal District Judge lacks the authority to prospectively order a federal sentence to run consecutively (or concurrently) to an anticipated but yet to be imposed federal sentence. *Id.* (citing *Setser v. United States*, 132 S.Ct. 1463, 1473 (2012); *United States v. Obey*, 790 F.3d 545, 548-50 (4th Cir. 2015); *United States v. Montes-Ruiz*, 745 F.3d 1286, 1290-93 (9th Cir. 2014)). Defendant contends that this Court erroneously relied upon the SRV Court's Order that the supervised release sentences should run consecutively to any sentence imposed by this Court for the substantive offenses at Criminal Numbers 12-200 and 12-309. (Docket Nos. 62, 63, 65). He further maintains that he was provided ineffective assistance of counsel as his trial counsel did not argue to this Court that he should be granted concurrent sentences. (*Id.*).

In its Response, the Government argues that Defendant waived his right to file a motion under 28 U.S.C. § 2255 collaterally attacking his sentence in his plea agreement with the Government and points out the Court of Appeals enforced the appellate waiver in the same plea agreement and summarily dismissed Defendant's appeal of the substantive sentences in these matters. (Docket No. 64). The Government alternatively maintains that Defendant's legal arguments are otherwise without merit. (*Id.*).

After careful consideration of the parties' arguments, and for the following reasons, the

[2] The Court notes that both Defendant and the Government cite to and rely upon the SRV Court's decision. (*See* Docket Nos. 62-65). To the extent necessary, the Court also takes judicial notice of that decision and the proceedings thereon.

Court will enforce the valid waiver contained in Defendant's plea agreement as doing so would not amount to a miscarriage of justice and also holds in the alternative that it would deny Defendant's Motion on the merits if his claim was not otherwise barred. Accordingly, Defendant's § 2255 Motion [62] is denied.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As noted, the pending Motion relates to four separate criminal cases against Defendant: Criminal Numbers 08-229 and 08-297 which are assigned to the SRV Court; and, Criminal Numbers 12-200 and 12-309 which are presided over by the undersigned Judge. Defendant was represented by appointed counsel, Stephen Begler, Esquire in all of these cases. The relevant facts necessary to resolving the Motion follow.

On November 25, 2008, Defendant was sentenced at Criminal Numbers 08-229 and 08-297 to concurrent terms of 46 months' incarceration upon his earlier guilty pleas to charges of possession with intent to distribute less than 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and receipt of a firearm by a person under indictment, in violation of 18 U.S.C. § 922(n). (*Presentence Investigation Report dated 1/14/14*; Docket No. 36 at ¶¶ 46, 47). The record is undisputed that Defendant concluded the imprisonment portion of his sentences and was placed on supervised release on November 4, 2011, with his three year term of supervised release set to expire on November, 3, 2014. (*Id.*). However, on July 24, 2012 or less than eight months after being released from the custody of the Bureau of Prisons, ("BOP"), Defendant was indicted at Criminal Number 12-200, as part of a large heroin trafficking operation and he was charged with conspiracy to distribute and possess with intent to distribute 1 kilogram or more of heroin from October 2011 through June 28, 2012, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A), and 846, at Count 1 and a separate count of distribution of heroin on April 11, 2012 at Count 4, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (*Id.* at ¶ 1). The Indictment returned at Criminal Number 12-200 remained sealed for a few weeks and arrest warrants were issued for all of the defendants on July 31, 2012. (*Id.*). Defendant was then arrested and detained as of August 2, 2012. (*Id.* at ¶ 2). Upon execution of the arrest warrant, Defendant's residence was searched and he was found in possession of a quantity of heroin; $20,090 in United States currency; and drug trafficking equipment and paraphernalia. (*Id.* at ¶¶ 20-23).

Naturally, a petition on supervised release action was dual-filed at Criminal Numbers 08-229 and 08-297 alleging that Defendant violated the terms of his supervised release based upon his criminal conduct set forth in the Indictment at Criminal Number 12-200. (Docket No. 36 at ¶¶ 46, 47). As is the typical practice in such situations, the supervised release hearing was continued until the criminal charges against Defendant supporting the violations were resolved. Another Indictment was returned against Defendant at Criminal Number 12-309 on December 18, 2012, charging him with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) as a result of his possession with intent to distribute the quantity of heroin found during the search of his residence on August 2, 2012. (*Id.* at ¶ 4).

Defendant appeared before this Court for a change-of-plea proceeding on October 17, 2013 and after conducting an extensive colloquy to confirm that Defendant was competent, understood the constitutional and other rights that he was waiving by entering guilty pleas, and was knowingly and voluntarily pleading guilty, the Court accepted his guilty pleas to Count 4 of the Indictment at Criminal Number 12-200 and Count 1 of the Indictment at Criminal Number 12-309. (*Id.* at ¶ 7). During the proceeding, the Court was presented with a fully executed plea agreement signed by the

parties, including Defendant and his counsel, wherein the parties had stipulated pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that the specific sentence in these matters would be: concurrent terms of imprisonment of 60 months; concurrent terms of supervised release of 6 years; no fine; and a special assessment of $200.00. (Docket No. 48 at 20-27). The Court addressed the terms of the plea agreement directly with Defendant, who assented, under oath, that: he had discussed all relevant matters pertaining to the plea agreement with his counsel; and, was knowingly and voluntarily accepting the terms of the plea agreement and the waivers contained therein, including waiving his right to appeal the judgments and sentences to the Court of Appeals and to collaterally attack the sentences by filing a motion to vacate with this Court. (*Id.* at 24-27). The Court accepted Defendant's guilty pleas but deferred acceptance of the plea agreement and the parties' stipulated sentence pending its receipt of a Presentence Investigation Report, ("PIR"). (*Id.* at 27-8). Thereafter, the PIR was filed with the Court on January 14, 2014, computing the advisory guidelines range to be 70-87 months' incarceration and noting that the supervised release hearing was scheduled before the SRV Court to occur in the near future. (Docket No. 36 at ¶¶ 46, 47).

On February 11, 2014, Defendant appeared before the SRV Court for the supervised release violation hearing at Criminal Numbers 08-229 and 08-297. *See Sears*, 2016 WL 757763 at *2. As of this date, Defendant had been in continuous custody of the federal government since his initial arrest on August 2, 2012, i.e., he had been in jail for 1 year, 6 months and 9 days, without counting February 11, 2014. (Docket No. 36 at ¶ 2). Stated another way, Defendant had been in prison for 18 months and nine days before entering the courtroom for the proceeding. At that time, Defendant admitted the violations set forth in the supervised release petitions, his terms of

supervised release were revoked and he was sentenced to concurrent terms of 18 months' imprisonment at each of Criminal Numbers 08-229 and 08-297. *See Sears*, 2016 WL 757763 at *2. The SRV Court also ordered that such sentences shall run consecutively to any sentence imposed by this Court for the offenses at Criminal Numbers 12-200 and 12-309. *Id.* As part of the Judgments, the SRV Court also recommended to the BOP that Defendant be granted credit for time served, to the extent that he was eligible for same. *Id.* at *3, n.5.

A few days later, on February 14, 2014, this Court held a telephone sentencing conference, at which time the Court was advised by counsel for the parties and the Probation Officer that Defendant had been sentenced for his supervised release violations. (*See Text Minute Entry, 2/14/14*). At the direction of the Court, the Probation Officer filed a Second Supplemental Addendum on the same day, amending the PIR to include a summary of the disposition of the supervised release petitions at Criminal Numbers 08-229 and 08-297, as was previously outlined above. (Docket No. 42).

Defendant appeared before this Court for sentencing at Criminal Numbers 12-200 and 12-309 on February 19, 2014. (Docket Nos. 43, 49). As of this date, Defendant had been in continuous custody of the federal government for 18 months and 17 days, not including the date of the sentencing. Indeed, Defendant admits in his *pro se* filings that he had served the entirety of the concurrent 18 month sentences of incarceration imposed by the SRV Court for his supervised release violations as of this time. (Docket No. 63 at 6 ("The '[SRV]' Court denied the petitioners['] request to credit him with 18 months['] time served toward the imposed sentence, which the petitioner had already served in full at the time of sentencing.")).

During the sentencing hearing, the Court noted the procedural background of the case

which included the disposition of the supervised release proceedings, as was set forth in the Second Supplemental Addendum. (Docket No. 49). Because there were no objections to the PIR, the Addenda nor the Court's Tentative Findings and Rulings, the Court found that the advisory guidelines range was 70 to 87 months' incarceration. (*Id.* at 7). Counsel for the parties provided brief argument wherein they both advocated that the Court should accept the parties' Rule 11(c)(1)(C) plea agreement and impose the stipulated sentence of 60 months' incarceration; 6 years' supervised release; and a special assessment of $200. (*Id.* at 12-13). Defendant made a statement in allocution. (*Id.* at 13-14). Neither party made any recommendation to the Court concerning whether the sentences at Criminal Numbers 12-200 and 12-309 should run concurrently or consecutively to the supervised release sentences of 18 months. (*Id.* at 12-14). The Court, however, relied upon the length of the supervised release sentences when setting forth its reasons for accepting the parties' plea agreement of 60 months' incarceration which effectively included a joint motion for a variance below the advisory guidelines range of 70-87 months' incarceration. (*Id.* at 14-15). The Court commented that when considering 60 months' incarceration in combination with the consecutive 18 month term for the supervised release violations, the total sentence of 78 months' incarceration fell squarely within the advisory guidelines range of 70-87 months. (*Id.*). All told, this Court accepted the parties' plea agreement, imposed the agreed upon sentence, and like the SRV Court, ordered that the sentences run consecutively to those imposed for the supervised release violations. (Docket Nos. 44; 49 at 18-19). As part of the plea agreement, Count 1 of the Indictment at Criminal Number 12-200 was dismissed. (Docket No. 44).

Despite the appellate waiver in his plea agreement, Defendant filed a *pro se* notice of

appeal which was received by the Clerk of Court and filed on March 5, 2014. (Docket No. 45). Shortly thereafter, on May 28, 2014, the United States Court of Appeals for the Third Circuit issued an Order granting the Government's motion to enforce appellate waiver and for summary affirmance of the Judgment. (Docket No. 50). Defendant later submitted a *pro se* petition for rehearing with the Court of Appeals wherein he challenged this Court's Order directing that the sentences for the substantive offenses run consecutively to the supervised release sentences. (*See* Docket No. 52 at 2). The petition for rehearing was also denied by the Court of Appeals. (*Id.*).

In September of 2014, Defendant separately filed *pro se* § 2255 Motions in the cases before the SRV Court at Criminal Numbers 08-229 and 08-297 and the cases before this Court at Criminal Numbers 12-200 and 12-309. *See* Docket No. 52; *see also Sears*, 2016 WL 757763 at *1. With respect to Criminal Numbers 12-200 and 12-309, Defendant initially set forth four separate grounds for relief under § 2255. (Docket No. 52). Yet, he affirmatively withdrew grounds two, three and four of his initial § 2255 purporting to raise claims alleging ineffective assistance of his trial counsel due to all of the following: negotiating a waiver of appeal in the plea agreement (ground two); failing to pursue a motion to suppress evidence (ground three); and failing to object to relevant conduct attributed to drug amount which increased his base offense level and advisory guidelines sentencing range (ground four). (Docket No. 59). At Defendant's behest, this Court dismissed each of grounds two, three and four, with prejudice. (*Id.*). In contrast, ground one set forth in the initial motion alleged error by the Court in ordering that the sentence run consecutively in reliance upon the SRV Court's prior Judgments in the supervised release cases and claimed that he was provided ineffective assistance by his counsel as he failed to argue at his sentencing before this Court that the substantive and supervised release sentences

should run concurrently. (Docket No. 52). This remaining claim was dismissed, without prejudice, to Defendant renewing same after the parallel § 2255 proceedings before the SRV Court had concluded. (Docket No. 59).

As noted, the SRV Court issued its decision denying Defendant relief under § 2255 on February 26, 2016. *See Sears*, 206 WL 757763 at *1. Defendant filed a notice of appeal challenging that decision. Subsequently, the SRV Court ruled that Defendant was not entitled to a certificate of appealability to pursue his claims before the Court of Appeals. *See Sears v. United States*, 2016 WL 2766039 (W.D. Pa. May 13, 2016). That matter remains pending before the Court of Appeals.

On March 4, 2016, Defendant filed a notice advising this Court of the disposition of the parallel § 2255 motion. (Docket No. 60). This Court then established a briefing schedule for the litigation of Defendant's renewed claims. (Docket No. 61). Pursuant to this schedule, Defendant filed his *pro se* renewed § 2255 Motion on April 5, 2016 and an Addendum two days later. (Docket Nos. 62, 63). The Government submitted its Response on April 26, 2016. (Docket No. 64). Defendant then presented his "Answer" which the Court construes as a Reply Brief, along with a number of attachments. (Docket No. 65).

The official transcripts of the October 17, 2013 change-of-plea hearing and February 19, 2014 sentencing hearing were all filed and considered by the Court. (Docket Nos. 48, 49). This matter is now ripe for review.

## III. STANDARD OF REVIEW

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. §

2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," *United States v. Seeley*, 574 F. App'x 75, 78 (3d Cir. 2014), which were initially set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and, (2) counsel's deficient performance prejudiced the defense." *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores–Ortega*, 528 U.S. 470, 476–477 (2000) (citing *Strickland*, 466 U.S. at 688, 694) (same). The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005), which quoted *United States v. McCoy*, 410 F.3d 124, 132 n. 6 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States*

*v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Lilly*, 536 F.3d at 195. If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation." *United States v. Knight*, 2009 WL 275596, at *13 (W.D. Pa. 2009) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

## IV. DISCUSSION

The Court initially turns to the threshold issue raised by the Government which advocates that the Court should enforce the collateral attack waiver in the parties' plea agreement and dismiss Defendant's § 2255 Motion. (Docket No. 64). It is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted). The United States Court of Appeals for the Third Circuit has repeatedly held that a criminal defendant may effectively waive the right to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a plea agreement with the government. *Mabry*, 536 F.3d at 241; *see also United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) ("The ability to waive statutory rights . . . logically flows from the ability to waive constitutional rights."). If the waiver is effective, a criminal defendant is jurisdictionally barred from pursuing habeas relief. *Mabry*, 536 F.3d at 242.

In reaching this decision, the district court must examine "the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would

work a miscarriage of justice." *Id*. at 237. A criminal defendant has the initial burden "of presenting an argument that would render his waiver unknowing or involuntary" but the district court has "an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Id*. at 237-38 (citing *Khattak*, 273 F.3d at 563).

**A. Knowing and Voluntary Nature of the Plea Agreement**

At the outset of Defendant's change of plea hearing, the Court established that he was competent to participate in the proceedings. (*See* Docket No. 48). Although he had not completed high school, dropping out during the twelth grade, and had not subsequently earned his GED, he had no history of mental or emotional health problems, and appeared to the Court to be alert, knowledgeable and articulate. (Docket No. 48 at 4-6). Defendant averred that he was not under the influence of drugs or alcohol and was not under the care of a physician, therapist, psychologist, or psychiatrist for any ailments which would have affected his ability to understand the proceedings.[3] (*Id*. at 4-5). Defense counsel asserted that his client was competent to participate meaningfully in the hearing. (*Id.*). The Court observed Defendant's demeanor and responses during the colloquy and concluded that he understood the proceedings. (*Id*. at 6). Based on the foregoing, the Court found that Defendant was competent to meaningfully participate and to enter guilty pleas if he chose to do so. (*Id.* at 5).

After ensuring that Defendant was competent to plead, the Court queried Defendant to determine whether he had discussed his case with his attorney and whether he was satisfied with

[3] The Court notes that Defendant does have a substance abuse history, as is outlined in the PIR and was discussed at the sentencing hearing. (Docket Nos. 36, 49). However, he was not under the influence of drugs during the proceedings before the Court and, as noted, had been incarcerated for more than a year before the change of plea hearing in October of 2013.

the representation provided by counsel. (*Id*. at 6-7). Defendant answered each question in the affirmative. (*Id*.).

The Court proceeded to advise Defendant of the constitutional rights and protections that he would be giving up by pleading guilty, as well as the statutory penalties associated with the charges against him. (*Id*. at 7-15). Defendant indicated that he understood each of those rights and still wished to plead guilty. (*Id*. at 15).

In response to the Court's request, government counsel summarized the terms of the agreement on the record, including the parties' stipulations as to the advisory guidelines range and noted that this was a Rule 11(c)(1)(C) plea agreement wherein the parties had agreed to a stipulated sentence of concurrent 60 month terms of incarceration at each count. (*Id*. at 20-23). Among other important terms, Government counsel specifically stated that Defendant had "waive[d] the right to file a motion to vacate sentence under Title 28, United States Code, Section 2255 attacking his conviction or sentence and the right to file any other collateral proceeding attacking his conviction or sentence." (*Id.* at 21). Defendant confirmed on the record that he consented to each of the terms contained in the agreement. (*Id.* at 24). The Court then explored the appellate and collateral attack waiver provisions with Defendant in greater detail:

> THE COURT: Mr. Sears, do you understand that generally you or the government would have the right to appeal any sentence that this Court could impose, but pursuant to Paragraph A8, you might want to turn to A8 on Page 3 of the agreement, I'm looking at the top of the page, it starts out: Ricco Sears waives the right -- Do you see where I am, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Pursuant to Paragraph A8 on Page 3 of the plea agreement, you have waived some or all of your appeal

rights, including the right to take a direct appeal under Title 28, United States Code, Section 1291, or Title 18, United States Code, Section 3742, subject to the exceptions that are spelled out in the plea agreement, and those exceptions, Mr. Sears, they appear under 8 and I'm looking at A and B at the top of Page 3. If you follow along, do you understand that those exceptions permit you to appeal your sentence only if the United States appeals your sentence, or if the sentence exceeds the applicable statutory limits set out by the United States Code, or, the sentence unreasonably exceeds the guideline range which this Court will determine under the sentencing guidelines.

Do you understand all that, sir?

THE DEFENDANT: Yes, I do.

THE COURT: To repeat, by these provisions of the plea agreement, you are giving up certain rights on appeal. Once again, do you understand that?

THE DEFENDANT: Yes.

THE COURT: Then let's continue looking at Page 3, I'm going to call your attention to the paragraph that begins:

Ricco Sears further waives the right to file -- Do you see where I am?

THE DEFENDANT: Yes.

THE COURT: Further, do you understand that pursuant to Page 3, Paragraph A8, the paragraph that I just pointed out to you, you have waived your right to file a motion to vacate sentence under Title 28, United States Code, Section 2255 attacking your conviction or sentence and the right to file any other collateral proceeding attacking your conviction or sentence.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So, all together, Mr. Sears, you have limited rights to an appeal.

Now, let me ask you some additional questions.

Has Mr. Begler reviewed with you what your appeal rights are and what you may be waiving?

THE DEFENDANT: Yes, he has.

THE COURT: So, once you have had a discussion with him, you understand that your appeal rights are limited?

THE DEFENDANT: Yes.

THE COURT: You should also understand that waivers of appeal are generally permissible in this court and in the Third Circuit Court of Appeals as long as they are knowingly and voluntarily waived, unless there is some kind of a miscarriage of justice.
Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, I have examined the record such as I know it in your case and related cases and I have observed you here in court, I've seen your interactions with Mr. Begler, I've heard your responses to my questions, and at this time, I don't find any basis to invalidate or cancel out your waiver in this case.
Do you understand that, sir --

THE DEFENDANT: Yes.

(*Id*. at 24-27). Defendant stated that he understood and agreed to each of the terms set forth in the plea agreement and was satisfied with the agreement that he had reached with the Government. (*Id*. at 6, 24-27, 44). He also told the Court that his guilty pleas were the product of his own volition and denied that he had been threatened or forced to plead guilty or that anyone had made him any promises as to what his actual sentences would be, outside of the plea agreement. (*Id.* at 43-44).

At the sentencing hearing, counsel for both parties advocated that the Court should accept the parties' plea agreement and impose the stipulated sentence. (Docket No. 49 at 12-14). After

careful consideration of the parties' arguments, and all of the facts of record in light of the factors under section 3553(a), the Court accepted the parties' agreement, expressly noting that the sentences represented a variance below the advisory guidelines range of 70 to 87 months, but, when viewed in combination with the 18 month sentences, the total sentence of 78 months was within the range of 70 to 87 months' incarceration. (*Id.* at 14-17).

In this Court's estimation, the record before the Court, including the fully executed written plea letter and Defendant's assertions under oath at the change-of-plea hearing, conclusively establishes that Defendant knowingly and voluntarily agreed to waive his rights to collaterally attack the sentences that he received as part of his Rule 11(c)(1)(C) plea agreement. Defendant's cursory assertions to the contrary in his subsequent *pro se* filings that he was forced to plead are not credited in light of this overwhelming record. *See e.g., Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). As the Government advocates, Defendant received substantial benefits from the plea agreement, most significantly that Count 1 of the Indictment at Criminal Number 12-200, which carried a mandatory minimum penalty of 10 years and up to a life term, was dismissed by the Government. *See e.g., Khattak*, 273 F.3d at 562 (collateral attack waivers "may assist defendants in making favorable plea bargains . . . providing defendants a valuable bargaining chip in the plea process."). Additionally, the 60 month terms represented a significant variance below the advisory guidelines range of 70-87 months and the concurrent designation between the two counts of conviction precluded the Court from ordering that the sentences run consecutively

under 18 U.S.C. § 3584(a). Overall, the Court finds that Defendant knowingly and voluntarily waived his rights to collaterally attack his sentences under § 2255 in Criminal Numbers 12-200 and 12-309 and that this waiver is enforceable. *See Mabry*, 536 F.3d at 242.

**B. Miscarriage of Justice**

Having determined that the waiver was knowing and voluntary, the Court must next consider "whether enforcement [of the waiver] would work a miscarriage of justice" under the facts of this case. *Mabry*, 536 F.3d at 237. In so doing, the Court applies a "common sense approach" that takes into account "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting that error on the government, and the extent to which the defendant acquiesced in the result." *Id*. at 242-43 (internal citations and quotations omitted). "Courts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice." *United States v. Mitchell*, 538 F. App'x 201, 203 (3d Cir. 2013) (citing *Khattak*, 273 F.3d at 563).

Initially, a criminal defendant's challenge to the designation of sentences to run concurrently or consecutively is of the type that may be waived generally by a defendant under a broad waiver clause. *See e.g., United States v. Banks*, 743 F.3d 56 (3d Cir. 2014) (District Court order that sentences run consecutively barred by appellate waiver). Indeed, the Court of Appeals enforced the appellate waiver in Defendant's plea agreement with the Government and summarily dismissed Defendant's appeal of the Judgments through which he had requested appellate review of the consecutive sentences that were imposed by this Court. (Docket No. 50).

Here, the broad waiver in the collateral attack provision barred Defendant from filing "a

motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." *Plea Letter dated 9/29/13* at ¶ A.8. There are no exceptions set forth in the provision, demonstrating the parties' intent that all collateral attacks on the convictions and sentences would be barred. *See Banks*, 743 F.3d at 58-9 (holding that a "broadly inclusive waiver" provision that included no specific exceptions barred the appeal of a consecutive sentence). Thus, the only possible basis for the Court to review the petition is if the Court determines that a "miscarriage of justice" would result, as noted above. *See Mabry*, 536 F.3d at 237.

Defendant raises essentially two separate arguments in an effort to meet the miscarriage of justice test. (Docket Nos. 62, 63, 65). First, he contends briefly that his trial counsel acted unethically in recommending that he accept the collateral attack waiver provision that necessarily barred a subsequent ineffective assistance of counsel claim. (*Id.*). Second, Defendant maintains that the Judgments entered in the supervised release proceedings must have influenced this Court's sentencing decisions and points out that the SRV Court acknowledged that the Judgments should not have contained an order designating the sentences to be served consecutively to the yet to be imposed substantive sentences. (*Id.*). Having carefully considered these positions, the Court is not persuaded that the miscarriage of justice exception applies in this case.

On the first point, this Court recently examined the ethical issues posed by the collateral attack waiver in plea agreements that was previously used by the U.S. Attorney's Office in *United States v. Gardner*, Crim. No. 09-180, 2015 WL 4714927 at *5-7 (W.D. Pa. Aug. 7, 2015). In *Gardner*, the Court declined to hold that the enforcement of the collateral attack waiver would result in a miscarriage of justice because: the various ethics opinions confronting the issue were

non-binding; the Court of Appeals for the Third Circuit had expressly declined to establish blanket, bright-line rules prohibiting the enforcement of such clauses; and many District Courts had continued to enforce the provisions despite the U.S. Attorney's decision to remove them from future plea agreements. *Id.* at *5-7. Notably, the Court of Appeals subsequently denied Ms. Gardner's request for a certificate of appealability challenging this Court's ruling and that decision stands. *See United States v. Gardner*, App. No. 15-3147 (3d Cir. Feb. 19, 2016). Accordingly, for the reasons expressed in *Gardner*, 2015 WL 4714927 at *5-7, this Court once again declines to hold that the mere inclusion of the broad collateral attack waiver provision in the plea agreement represents a miscarriage of justice and will proceed to evaluate the specific arguments lodged by Defendant. *See e.g., United States v. Mitchell*, 538 F. App'x 201, 203 (3d Cir. 2013) (acknowledging the ethical concerns raised by several state bar association ethical committees but "adher[ing] to the case-by-case evaluation" set forth in *Khattak* "which requires determining the validity of each appellate waiver based on its terms and the circumstances in that case."); *United States v. Grimes*, 739 F.3d 125, 130 (3d Cir. 2014).

The next inquiry for the Court is whether the order by the SRV Court prospectively designating the supervised release sentences to run consecutively to the substantive sentences that had yet to be imposed and which the SRV Court concluded was entered in error, represents a miscarriage of justice warranting relief from the collateral attack provision in ¶ A.8 of the plea agreement. After reviewing this matter, this Court finds that any errors occasioned by the SRV Court's Judgments were harmless and neither prejudiced Defendant nor affected his substantial rights at the sentencing hearing before this Court. This holding is reached for several reasons.

First, a thorough review of the facts and circumstances of these matters demonstrate that

Defendant had already served the entirety of the supervised release sentences of 18 months before he appeared in Court for his sentencing at Criminal Numbers 12-200 and 12-309. Defendant admits as much in his *pro se* filings. (Docket No. 63 at 6 ("The '[SRV]' Court denied the petitioners['] request to credit him with 18 months['] time served toward the imposed sentence, which the petitioner had already served in full at the time of sentencing.")). To be clear, the undisputed record shows that Defendant was in federal custody from August 2, 2012 through February 18, 2014 or for a period of **18 months and 17 days** before appearing for his sentencing at Criminal Numbers 12-200 and 12-309 on February 19, 2014. (Docket No. 36 at ¶ 2). The cases are legion that neither 18 U.S.C. § 3584(a) nor Guideline § 5G1.3 permit a court to order sentences to run concurrently unless a defendant is subject to an undischarged term of imprisonment on the date of the sentencing – which is the earliest date the sentences could have commenced under federal law.[4] *See e.g.*, *Hasan v. Sniezek*, 379 F. App'x 232, 235 (3d Cir. 2010) (holding that § 5G1.3 "refers only to undischarged terms of imprisonment" and that as the defendant had "completed his sentence for the supervised release violation approximately five months before he was sentenced for the instant offense" his sentence had been discharged and the sentences could

[4] As this Court held in *United States v. Zwick*,

> [p]ursuant to 18 U.S.C. § 3584 and Guideline § 5G1.3, a district court has the authority to order that a term of imprisonment run consecutively or concurrently to another term of imprisonment imposed either at the same time or prior to the imposition of sentence. *See* 18 U.S.C. § 3584; U.S.S.G. § 5G1.3. However, the authority to order that a term of imprisonment run concurrently to a term of imprisonment previously imposed remains limited by section 3585(a), and, even if a concurrent sentence is ordered, the earliest date that the federal sentence commences is the date of sentencing.

*United States v. Zwick*, Crim. No. 07-425, Civ. A. No. 10-1449, 2011 WL 666182, at *7 (W.D. Pa. Feb. 14, 2011). "[A] district court is without authority to backdate a sentence to commence prior to the date that a sentence of imprisonment is imposed." *Id.* Further, "[u]nder 18 U.S.C. § 3585(b), the Bureau of Prisons has the exclusive authority to determine if a defendant is entitled to presentence credit for time served prior to the commencement of his sentence," and any order issued by a district court granting credit for time served is treated as a non-binding recommendation to the BOP. *Id.* (internal citations omitted).

not run concurrently); *Morales v. Zenk*, 414 F. App'x 383, 386 (3d Cir. 2011) (holding that because the federal sentence had been fully satisfied, the second District Judge lacked the authority to order the sentences to run concurrently); *Prescod, Jr. v. Schuylkill*, 630 F. App'x 144, 147 (3d Cir. 2015) (citing *United States v. Lucas*, 745 F.3d 626, 630 (2d Cir. 2014) (federal courts lack the authority to order that a sentence run concurrently with a sentence which has been completely discharged)).

Here, setting aside any computations by the BOP, (such as credits for good time or the like), which may have reduced the actual time that Defendant had to serve below the concurrent 18 month terms that were ordered, Defendant's supervised release sentences were undoubtedly discharged and fully satisfied as of February 19, 2014 when he appeared before this Court for his sentencing.[5] Hence, because Defendant was not subject to any undischarged term of imprisonment at that time, this Court simply did not have the authority to order that the substantive sentences run *concurrently* to the supervised release sentences, even if this Court believed that the imposition of concurrent sentences was appropriate. *See* 18 U.S.C. § 3584(a) ("if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively."). Therefore, any errors that may have been committed by the SRV Court had no bearing on Defendant's substantive sentences and he was not prejudiced by his counsel failing to argue for concurrent sentences that this Court

---

[5] The Court takes judicial notice of the Bureau of Prisons' Inmate Locator tool available at www.bop.gov which shows that Defendant's projected release date is presently reported as May 5, 2018. *See e.g., Perez v. Zickefoose*, 2014 WL 47727 (D.N.J. Jan. 7, 2014) (taking judicial notice of BOP inmate locator projection). Considering that Defendant was initially detained upon his arrest on August 2, 2012, if his projected release date is May 5, 2018, the BOP is presently projecting that Defendant will serve 5 years, 9 months and 3 days in prison (or approximately 69 months) which, of course, is below the total of 78 months that were imposed in Criminal Numbers 08-229, 08-297, 12-200 and 12-309. Such projection plainly indicates that the BOP has granted Defendant credit for time served in presentence custody and also believes that he will be eligible for good time credit, prompting an earlier release date. To be clear, as Defendant is housed at FCI Beckley in the Southern District of West Virginia, this Court lacks jurisdiction to consider any challenge to the BOP's computation of Defendant's sentence.

lacked the authority to impose. *See Real v. Shannon*, 600 F.3d 302, 310 (3d Cir. 2010) (defense counsel is not ineffective for failing to raise an unmeritorious claim). Further, given that the specific relief that Defendant is requesting via his § 2255 Motion is an order designating the substantive and supervised release sentences as concurrent, an order which this Court lacks the authority to enter, his Motion must be denied.

Second, the Government is correct that this Court's affirmative order that the sentences run consecutively was unnecessary and that Defendant was not prejudiced by the Court's inclusion of such language in the Judgments. In addition to the reasons set forth above, section 3584(a) provides, in relevant part, that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). Accordingly, if the Judgments were silent and contained no directives as to whether the sentences should run concurrently or consecutively to those imposed by the SRV Court, the sentences would run consecutively by default. *See e.g., Rush v. Shartle*, Civ. A. No. 13-4788, 2015 WL 5567307, at *5 (D. N.J. Sept. 22, 2015) ("the default presumption is that Petitioner's sentences should run consecutively."); 18 U.S.C. § 3584(a), *supra*.

Third, even if Defendant was eligible for concurrent sentences vis-à-vis the substantive and supervised release sentences, this Court accepted the parties' Rule 11(c)(1)(C) plea agreement as part of an individualized assessment of all of the section 3553(a) factors and determined, in its discretion, that concurrent sentences of 60 months' incarceration were sufficient but not greater than necessary to serve all the goals of sentencing in Defendant's cases. *See* 18 U.S.C. § 3553(a). While the Court recognized that 60 months' incarceration represented a variance below the advisory guidelines range of 70 to 87 months, the Court found that the combination of the

substantive and supervised release sentences of 78 months was within the range. To answer the question posed by Defendant, this Court did not treat the decision by the SRV Court to be binding – as the Court understands from prior matters that the decision of whether sentences run concurrently or consecutively is generally left to the discretion of the second Judge that has the opportunity to impose a sentence regardless of the language utilized by any order by the first Judge. *See e.g., United States v. Zwick*, 2011 WL 666182, at *7 (W.D. Pa. Feb. 14, 2011).

Further, the consecutive designation ordered by the SRV Court was wholly consistent with Guideline § 7B1.3(f) which "conveys a strong preference for a consecutive sentence" as between sentences imposed for substantive offenses that form the underlying bases of supervised release violations. *Banks*, 743 F.3d at 58. This is so because the sentence for the supervised release violations is primarily meant to sanction Defendant's breach of trust that was placed in him by the original sentencing court rather than as punishment for the substantive offenses that he committed while on release. *See United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006) ("A district court's primary consideration in handing down a revocation sentence is the defendant's breach of trust."). In this Court's estimation, the imposition of concurrent sentences in Defendant's cases vis-à-vis the supervised release violations was simply inappropriate because he recidivated a few months after being released from BOP custody and engaged in the same criminal behavior, heroin trafficking, for which he was originally prosecuted at Criminal Number 08-229. The fact that this Court and the SRV Court shared the same opinion is hardly controversial and cannot serve as a basis to vacate the lawful sentences imposed in Criminal Numbers 12-200 and 12-309.

For all of these reasons, the Court finds that no miscarriage of justice will result from enforcement of the collateral attack waiver set forth in the parties' plea agreement. *See Mabry*,

536 F.3d at 237. Defendant received the exact sentences that he bargained for with the Government as part of that agreement. *See Plea Letter dated 9/29/13* at ¶ A.8. Finally, the Court holds alternatively that it lacked the authority to order the substantive and supervised release sentences to run concurrently as Defendant had already served the supervised release sentences at the time of his sentencing in these cases and that the Court's Order designating such sentences to run consecutively is fully consistent with the relevant law, i.e., 18 U.S.C. § 3584(a) and Guideline § 7B1.3(f), and was arrived at by this Court after careful consideration of all of the section 3553(a) factors in Defendant's cases. Accordingly, the Court would deny relief on the merits if Defendant was not barred from pursuing this Motion under the valid waiver in his plea agreement with the Government.

## V. CONCLUSION

Based on the foregoing, Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is denied, with prejudice. The Court also holds that Defendant has failed to make a substantial showing of the denial of a Constitutional right and is not entitled to a certificate of appealability. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: June 15, 2016

cc/ecf: All counsel of record
Defendant Ricco Sears, *pro se*
#09877-068
FCI Beckley
P.O. Box 350
Beaver, WV 25813